MURRAY vs. LAFTEN, ET AL.

1. In ejectment on a sheriff's deed, for property sold under executions, issued from the circuit court, founded on transcripts of judgments and proceedings under them, before a justice of the peace, appearing, from the transcripts, to be regular, the oral testimony of the justice, and papers produced by him, purporting to be the original executions, different from those copied in the transcripts, are not admissible evidence to show irregularity in the proceedings before the justice, and to assail the plaintiff's title.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

The plaintiff brought several actions of ejectment against the defendants, which were consolidated, and claimed the property in question, by virtue of a sheriff's deed conveying the same as the property of one John Miller. The executions on which it was sold, issued out of the clerk's office of the St. Louis circuit court, founded on transcripts of judgments and proceedings under them before a justice of the peace. The proceedings appeared to be regular, from the transcripts; but to show irregularity in them, the defendant offered the oral testimony of the justice. This testimony was objected to as incompetent for the purpose, by the plaintiff, but the circuit court overruled the objection and permitted the magistrate to be

sworn; and he testified that certain papers produced by him were the original writs of execution issued by him, and it appearing that these were returnable in sixty, and not in ninety days as set forth in the transcript offered in evidence by the plaintiff, the court instructed the jury—

1st. That the plaintiff could not recover.

2nd. That if the only executions issued by the justice were made returnable in sixty days, the subsequent proceedings were void.

The plaintiff complains of the decision of the court, admitting the testimony of the justice, and of the instructions of the court to the jury.

### F. P. Blair, Jr., for plaintiff in error, insists:

I. That the court erred in admitting the testimony of justice Wetmore, for the purpose of falsifying a record. A record of the superior court (as the transcript from the justice's court when filed in the circuit court as the basis of process out of that court had become) is the highest, and oral testimony is inadmissible to vary it.

The case at bar illustrates the reason and importance of this rule—under the rule that a record imports absolute verity * * * * * what becomes of the rule, and what safety is there in buying property on judicial sales, if these records may be impeached by oral testimony? It is immaterial what the oral testimony relates to, or the circumstances which corroborate it.

II. The plaintiff insists, that the instructions given to the jury are erroneous, to the effect, that the executions issued by the magistrate being made returnable in sixty days instead of ninety, they were void, and that consequently the subsequent proceedings in the circuit court were void.

This instruction was given on the idea, that the law laid down in Chouteau vs. Stephens, 11 Mo. Rep. 384, was applicable to this case; but that case only declares, that an irregular execution issued by a magistrate was void, and if the plaintiff's title had emanated from the process of the magistrate, the case would be applicable; but it is otherwise. The plaintiff's title comes from process sued out of the circuit court, which, though irregularly issued, is not void, but only voidable: See Chouteau vs. Stephens. The transcript from the justice, when filed in the circuit court, becomes a judgment and record of that court and is put on a footing, in all respects, with the judgments rendered there. The process to enforce it is equally under the control of the court and the judge, and the executions issued out of the court might have been quashed on a supercedeas issued: See Rev. Code 659, secs. 17 and 18.

The plaintiff cites the following cases in which irregular executions have been held voidable only, and the titles acquired under them sustained. 1st., when the judgment was paid before the sale, Dean vs. Connolly, 6 Barr 239; Reed vs. Austin 9 Mo. Rep. 722. 2nd., when sales were made, not in accordance with notice required by law and —— notice: Maddox vs. Sullivan, 2 Peck 89, 4; Natchez vs. Minor, 10 S. & M. 246. 3rd., when sales have been made on dormant judgments: 7 Iredell 387, State vs. Morgan; 4 Dev. 497, Dawson vs. Shepherd. 4th., when sales have been made under executions issued contrary to the express prohibitions of the statute: —— 4 Cranch 328, 333, where the supreme court says, proper course was to quash the executions: See also —— vs. Ward, 2 B. Monroe 127; 10 Peters 449.

The propriety of requiring the defendant to take advantage of any irregularity in issuing the executions out of the circuit court, is further shown by observing, that the statute only requires the preliminary executions to be issued by the magistrate and returned *"nulla bona"* by the Constable, when the defendant resides in the county. Now as a motion to quash the execution in this case, on the ground that sixty days instead of ninety days was improperly inserted in the magistrate's executions, it might have been shown that the defendant was a non-resident of the county, and that plaintiff was entitled to have executions on that ground, whether the magistrate's executions were valid or not.

Murray vs. Laften, et al.

M. L. GRAY, for respondent.

The executions issued by the justice of the peace, being on judgments over 90 dollars, returnable in 60 days were void: Laws of 1841, page 101, section ——; 11 Mo. Rep. 382; 5 Wend. 275; 9 Wend. 338; 14 Vt. 491; 16 Vt. 393.

No legal executions having issued on the justice's judgments, the executions from the circuit court were without authority, void, and the sale and all proceedings under them null: Rev. Code 1835 page 364 section ——; 3 Mo. 264; 4 Mo. 117; 7 Mo. 552.

The statute expressly declares, that no execution shall be issued by a clerk of the circuit court on a transcript of a justice's judgment, till an execution has been issued by the justice and returned *nulla bona.* The fact, whether an execution has issued from the justice and been returned, was a proper and material enquiry, and a fact that the plaintiff was bound to establish, to sustain the sale.

To disprove this alleged fact, the defendants introduced the original and only executions issued by the justice and identified them by the justice. This testimony was legal and the best possible evidence that could be offered. The defendants were not bound by the false transcripts that the plaintiff produced.

The purchaser at the Sheriff's sale must know at his peril that the proceedings are legal. But even the false transcripts of the executions filed in the clerk's office showed on their face that there had been no legal return of *nulla bona* by the Constable below.

The judgments before the justice were rendered on the 17th of February, 1844, and the executions bear date the same day. The transcripts of the pretended executions, with the pretended returns of *nulla bona*, were filed in the clerk's office on the 10th of May succeeding, 7 days before the return day before the justice; and on the 11th of May, 1844, 6 days before the apparent return days of the justice's executions, the clerk issues executions to the Sheriff.

The return of *nulla bona* before the return day of an execution, is a void return: 1 Croke 512; 7 Comyn's Dig. 285 E 3.

The testimony therefore, admitted by the court below, was proper, and there is no error in the action of the court in this respect, nor in the instructions given by the court.

For the same reasons, there was no error in the judgment given, nor in the refusing of a new trial.

GAMBLE, J., delivered the opinion of the court.

Judgments were recovered against Miller, the owner of the property in question, before a justice of the peace, and transcripts of the judgments, including executions thereon and the Constable's returns of *nulla bona* upon the executions, were filed in the office of the clerk of the circuit court in May 1844. Executions issued from the circuit court upon these judgments, and the property was sold and conveyed by the Sheriff to the plaintiff.

Upon the trial of the present action, the plaintiff gave in evidence the transcripts from the justice of the peace, **the executions** from the circuit court, and the Sheriff's deed for the **property.** The defendants introduced the justice of the peace, who produced certain papers which he testified were the original executions in the cases before him against Miller; and upon inspection of these papers they appeared to be returnable in sixty days from their date, although the sums recovered in the

several judgments were each above one hundred dollars. The transcripts of executions which were filed in the clerk's office showed the executions to be returnable in ninety days from their date, and the justice testified that this was a mistake in copying the executions, when the transcripts were about to be filed. The papers thus produced by the justice, were given in evidence, although the plaintiff objected both to the testimony of the witness and to the papers being received in evidence.

The evidence being before the court, an instruction was given, that the plaintiff could not recover.

The questions to be determined, depend upon the admissibility and effect of the evidence given by the defendants.

It was decided, in Coonce vs. Munday, 3 Mo. Rep. 374, that where the party obtaining a judgment before a justice of the peace filed a transcript of the judgment in the clerk's office, and obtained an execution upon which the real estate of the defendant was sold, the party claiming under such sale must prove, on the trial of an ejectment for the property, that an execution had been issued by the justice and had been returned *nulla bona,* before the execution issued from the circuit court. In that case it is stated, "that it did not appear by the transcript filed, that any execution had been issued by the justice before the execution issued from the circuit court." In the present case, a different state of facts exists. Here, the transcripts from the justice show executions issued in regular form by the justice and returned *nulla bona,* although the returns were made before the return day.

If the testimony of the justice and the papers offered as the original executions, were admissible, and if it was competent to question the validity of the execution issued by the justice, then the case of Stevens vs. Chouteau, 11 Mo. Rep. 384, would sustain the position taken by the defendant below and maintained by the court, that the executions having been made returnable in sixty instead of ninety days from their date, were void.

It is to be observed, that the justice's execution constitutes no part of the title of a purchaser who buys under an execution issued from the circuit court. The process of the circuit court executes the judgment of the justice, and the prohibition against issuing an execution from the circuit court, until an execution shall have been isssued by the justice and returned *nulla bona,* requires that the evidence that such execution had issued and been returned shall exist in the office of the circuit court. This is understood to be the proper construction of the law of 1835. Revised Code 365; because, when the transcript of the judgment has

been filed, the statute provides that "the judgment shall be equally under the control, and shall be carried into execution in the same manner, and with like effect, as the judgment of the circuit court;" and then immediately follows the language restraining the issuing of an execution until one has been issued by the justice and been returned. It is the natural meaning and force of this provision, that the court which is to execute the judgment shall possess the whole evidence on record, upon which its process is to issue, so that it may, in the exercise of the control given by the statute, act upon and restrain the process required to be issued. It is true, that the court, in Coonce vs. Munday, intimate a doubt whether it is the duty of the clerk, before issuing an execution upon the judgment of a justice, to ascertain whether an execution has previously been issued by the justice; but it is rather surprising, that such doubt should be expressed when so much importance is given to the fact, that the party had not produced the evidence that such execution had issued. If it be a fact, affecting the legality of the execution from the circuit court, that one had not been previously issued and returned before the justice, and having such effect that property sold under the execution from the circuit court did not pass to the purchaser, then, surely, it is necessary that the court should be possessed of the document which is necessary to the validity of its own process. Again, the principal object in filing these transcripts is to reach the real estate of the defendant, and it is not to be tolerated, that the evidence upon which the validity of the execution and title to the property is made to depend, shall be hunted for through the loose, neglected and scattered papers of some justice in some remote township at a period when it would be difficult to trace either him or his papers. It may then be assumed to be the intention of the legislature, in this enactment, that the evidence that an execution had been issued and had been returned before the justice, is to be filed in the office of the clerk of the circuit court.

The purchaser who takes title under the process of the court, if he looks to, or is bound to look to, the records of the court, for the foundation of the execution, finds a judgment which authorizes the execution, and he finds that an execution has been issued and returned before the justice, he takes the title by his purchase, subject only to such objections that show that the proceeding is a mere nullity. If in this case the execution of the circuit court was not a nullity, the title passed by the sale under it, and is not affected by facts which would have authorized the court to quash it. The transcript on file showed the judgment of the justice and an execution issued in due form of law, and the return of the Constable in the form required by the statute, but made

within the time allowed for the return of the execution. If this transcript was true in all its parts, the only objection that could be made to it was, that the execution was returned some few days before the return day. The case cited from 1 Coke 512, which is the same in 7 Comyn's Digest 285 E. 3, is a case of an action brought against bailiffs for a false return upon a *fieri facias*, made before the return day of the writ, and it was held that they were not liable to the action because the return was a void return. This, it will be observed, was a question between the plaintiff in the execution and the officers, and involved the question whether the officers had made themselves liable to the plaintiff by the act of returning the writ. It was directly between the parties interested in the return and seems to have but little application to a case in which a purchaser is introduced who does not even claim under the execution.

It cannot be necessary to refer to the multitude of cases in which the law has been declared, that the purchaser has no concern in any question affecting the validity of the proceedings under which he claims, unless the defect be such that the proceeding is a nullity. The Supreme Court of the United States held, in Blaine vs. The ship Charles Carter, 4 Cranch 332, in relation to executions said to have been issued before the day when, by said law, they could regularly be issued, that "if irregular, the court from which they issued ought to have been moved to set them aside; they were not void because the Marshal could have justified under them, and if voidable, the proper means of destroying their efficacy have not been pursued." In the present case, the circuit court had full power to vacate its own process, if irregularly issued upon the judgment of the justice, and before that tribunal the objections now made might have been availing, if made in proper time.

It is the opinion of the court, that the party seeking to avail himself of the powers of the circuit court to enforce the judgment of a justice of the peace, should file in the office of the clerk a transcript of the judgment, in order to have a lien on the real estate of the defendant and a transcript of the execution and Constable's return when he wishes to take out execution from the circuit court. While this is understood to be the proper course, under the statute, it is not designed to assert that the process of the circuit court will be void, if the transcript of the justice's execution and Constable's return is not filed in the clerk's office, but if it is so filed, then the validity of the circuit court execution cannot be impeached in any collateral proceeding, by showing that the transcript so filed varies from the original execution and return, or, that the original execution or return is void. It is also the opinion of the

court, that the objection now taken to the process of the circuit court on account of the Constable's·return to the execution before the justice, is not available in this action. The evidence then, given by the defendant, was improperly admitted, and when admitted did not authorize the instructions given by the court.

It will be seen, that it is here intended to modify the opinion given in the case of Coonce vs. Munday, and to bring the proceedings under these judgments, into something like conformity to the general provisions of the laws by which the title to real estate is affected.

The judgment is reversed and the cause remanded.